# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMANDA DEL TORO, DANIEL WERNER, JENNIFER MCGREGOR-HALSTEAD, JOSHUA CHROMICK, AND ALL OTHERS SIMILARLY SITUATED, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 4:19-cv-02635-JAR |
| CENTENE MANAGEMENT COMPANY, LLC, ) ) ) ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR STEP-ONE NOTICE PURSUANT TO THE FAIR LABOR STANDARDS ACT**

Plaintiffs' Motion seeks this Court's approval to send notice of opportunity to join a Fair Labor Standards Act ("FLSA") collective action to an unprecedentedly broad class comprising approximately 3,500 individuals across 28 states. Plaintiffs claim that Centene misclassified as exempt all employees working under various job titles, which Plaintiffs group together as "Care Management Employees" or "CMEs." Plaintiffs fail to clear even the low bar imposed upon them at this stage because they identify no company-wide policy of misclassifying "CMEs."

Whether any salaried, exempt "CME" performed primarily non-exempt duties is not a question of company-wide policy, but instead a question of isolated departure from Centene's lawful policy that requires such employees to perform exempt work. Many "CMEs" are classified as ***non***-exempt, including several Opt-in Plaintiffs, indicating there is no uniform policy. Further, the very declarations on which Plaintiffs rely indicate their knowledge is limited to a small fraction of the proposed collective. If this case proceeds as a collective action, resolution will require countless mini-trials to determine whether any individual failed to perform the professional case management position they were hired, paid, and expected to perform. For these reasons, the Court should deny Plaintiffs' Motion.

I.   **RELEVANT PROCEDURAL BACKGROUND**

Plaintiffs initiated this action on September 25, 2019 (Doc. 1), and filed a First Amended Class Action Complaint ("FAC") on October 31, 2019 (Doc. 21). In their FAC, Plaintiffs assert a claim for violation of the FLSA based on Centene allegedly misclassifying them and other employees as exempt and not paying them overtime. Doc. 21. Plaintiffs' Motion seeks to conditionally certify as a collective action all individuals who worked for Centene during the past three years as salaried exempt employees, and who: "performed case management duties under a job title that included one or more of the following terms: (1) Case/Care Manager; (2) Care

Coordinator; and (3) Program Specialist." Proposed Notice, Doc. 36-3, p. 81. To support their Motion, Plaintiffs provide only a few job descriptions (for which the positions and locations are unclear) that show wide variation in duties and educational qualifications. *See* Docs. 36-1 and 36-2. Plaintiffs also submit sixteen identical "cookie cutter" declarations from individuals whose purported knowledge is limited to a few positions in a handful of states. *See* Doc. 36-3.

## II. PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF FOR CONDITIONALLY CERTIFYING A NATIONWIDE COLLECTIVE ACTION.

### A. Legal Standard.

This Court is familiar with the burden of proof applied to a plaintiff moving for conditional certification of an FLSA collective action. *See, e.g., Murphy v. Ajinomoto Windsor, Inc*., 2017 WL 1194455, at *2 (E.D. Mo. Mar. 30, 2017). Conditional certification is **not automatic**, but must be reserved for only "appropriate cases." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). That a position is classified as exempt does not warrant certification[1]; otherwise, courts would certify every misclassification case:

> [T]he **mere classification of a group of employees--even a large or nationwide group--as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice** …. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification ….

---

[1] Courts regularly **deny conditional certification of claims that a defendant misclassified employees as exempt under the FLSA**. *See, e.g., Mitchell v. Covance, Inc*., __ F. Supp. 3d __, 2020 WL 543780 (E.D. Penn. Feb. 3, 2020); *Novick v. Shipcom Wireless, Inc*., 2017 WL 1344961, at *6 (S.D. Tex. Apr. 12, 2017) (courts must ensure collective actions are "being used appropriately to promote judicial efficiency, rather than used as a tool to burden a defendant and create settlement pressure"); *Pickering v. Lorillard Tobacco Co., Inc*., 2012 WL 314691 (M.D. Ala. Jan. 30, 2012); *Palacios v. Boehringer Ingelheim Pharm., Inc*., 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011) (denying conditional certification because "whether an employee is 'exempt' under the FLSA involves an analysis of each individual's daily duties"); *Colson v. Avnet, Inc*., 687 F. Supp. 2d 914, 927 (D. Ariz. 2010); *Forney v. TTX Co*., 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006); *Holt v. Rite Aid Corp*., 333 F. Supp. 2d 1265 (M.D. Ala. 2004); *see also Price v. Daugherty Sys., Inc.,* 2013 WL 3324364, at *4 (E.D. Mo. July 1, 2013) (applying slightly heightened, but still lenient standard and denying motion for conditional certification of claims that employees were misclassified as exempt); *Collins v. Barney's Barn, Inc*., 2013 WL 1668984 (E.D. Ark. Apr. 17, 2013) (denying conditional certification of claims that employees were misclassified as contractors).

*Colson*, 687 F. Supp. 2d at 927 (emphasis added).

Court oversight is critical in cases like this because exempt classification is inherently fact-specific and ill-suited for collective treatment. *See* 29 C.F.R. §§ 541.2, 541.700(a) (whether an employee is classified as exempt necessitates a fact-specific inquiry).[2] While the standard for conditional certification is lenient, if granted automatically it leads to inefficiencies where "disparate factual settings" would require plaintiffs to "put[] on the testimony of most (or even all) of the collective-action members." *Kumar v. Tech Mahindra (America) Inc*., 2019 WL 1330935 (W.D. Mo. Mar. 25, 2019) (decertifying nationwide collective due to varied job titles, duties, experiences, work locations, supervisors, and applicable exemptions).[3]

---

[2] *See, e.g., Smith v. Sovereign Bancorp., Inc.*, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) (court's oversight of the notice process protects against "an inefficient and overbroad application of the opt-in system" and "plac[ing] a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery"); *Adair v. Wis. Bell, Inc.,* 2008 WL 4224360 (E.D. Wis. Sep. 11, 2008) (denying conditional certification, noting "the financial burden to an employer may be significantly increased by conditional certification…because rather than limited to the experience of individual plaintiffs, discovery is expanded to class-wide policies and practices. Thus, although collective action and even court-facilitated notice is permitted under the FLSA,…the legislative history of the collective action procedure, and **Congress's expressed concern for the financial burden it may impose, supports the requirement of at least a modest factual showing that such collective action is appropriate** before a class is even conditionally certified." [citations omitted; emphasis added]); *cf. Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 367 (2011) (class certification improper if defendant would "not be entitled to litigate its statutory defenses to individual claims").

[3] *See also, e.g., Arnold v. DirecTV, LLC*, 2017 WL 1251033, at *9-10 (E.D. Mo. Mar. 31, 2017) (ordering decertification, finding defendant's "individualized defenses" made it "impracticable" to try the action collectively, and proceeding collectively "would most certainly result in jury confusion as well as prejudice" to defendant); *Price v. Daugherty Sys., Inc.,* 2012 WL 6200531 (E.D. Mo. Dec. 12, 2012) (decertifying FLSA collective involving allegations of exempt misclassification); *White v. 14051 Manchester, Inc.,* 301 F.R.D. 368, 377 (E.D. Mo. 2014) (decertifying FLSA collective where trial would be inefficient and violate defendant's procedural and constitutional rights); *Hamilton v. Diversicare Leasing Co*., 2014 WL 4955799, at *5 (W.D. Ark. Oct. 1, 2014) (ordering decertification where "the judicial inefficiency that would stem from a collective action outweighs any reduction in cost to potential plaintiffs"); *Wright v. Pulaski County*, 2010 WL 3328015 (E.D. Ark. Aug. 24, 2010) (granting decertification where individual defenses would involve consideration of personalized evidence so the interests of fairness and justice would not be served by attempting to adjudicate claims collectively).

Here, Plaintiffs' theory is that thousands of employees working for varied and independently-managed health plans across 28 states, in various job positions classified as exempt, **actually** performed non-exempt work on a day-to-day basis contrary to their professional licensure, nursing practice act requirements, state contract provisions, job descriptions, and Centene's expectations. This presents an inherently individualized inquiry. Plaintiffs fail to make even a modest showing that their theory relates to a common plan and can be tried collectively.

**B.      Plaintiffs Fail To Make Even A Modest Showing That All "CMEs" Nationwide Were Victims Of A Common Misclassification Policy.**

**1.      Centene's Health Plans Are Independently Managed And Provide Individualized Case Management.**

Centene health plans contract with state governments in 28 states to provide managed care to approximately 14 million members. Declaration of Kim Henrichsen ("Henrichsen Decl."), ¶¶ 2-3, 7. Each health plan is a separate and independent subsidiary of Centene Corporation, with its own Chief Executive Officer and independent management structure. *Id.*, ¶¶ 2-3. Every health plan operates differently, offers different managed care and insurance products to different member populations, and is subject to different regulatory and contractual requirements. *Id.*, ¶ 3. The health plans determine individual case manager assignments to meet these needs and requirements. *Id*. The day-to-day job duties performed by "CMEs" are determined by the health plans based on where the "CMEs" work, the products to which they are assigned, the local plan policies and practices, the members they serve, their professional licensure and particular specialties, the management philosophies of their managers, and other diverse factors. *Id.*, ¶ 4. Person-centered case management requires highly individualized assessments of each particular member, interpreting information provided by a member or observed in their environment, understanding each member's unique health and social goals and prioritizing those goals, developing a care plan

4

and follow-up protocol to achieve the best health outcomes for that member, determining modifications to the care plan, determining appropriate clinical interventions, managing medications, and changing and saving lives, all of which are "completely dependent on the case manager's medical knowledge and ability to exercise independent clinical judgment and critical thinking to make those decisions." Declaration of Angela Kurosaka ("Kurosaka Decl."), ¶¶ 6, 16, 18-21; Declaration of Sharon Bennatts ("Bennatts Decl."), ¶¶ 4-5, 11, 17; Declaration of Sophie Lamisere ("Lamisere Decl."), ¶¶ 6, 10-11, 15; Declaration of Kevin Calvert ("Calvert Decl."), ¶ 5. As a result, each member's individual needs and the specialized knowledge of the case manager are critical factors in determining the actual duties performed by the case manager.

### 2. Centene and the Individual Health Plans Expect Exempt "CMEs" to Perform Exempt Duties and Work to the Top of Their Licenses.

Centene requires and expects that each health plan will employ in exempt positions only those individuals who satisfy a job's requirements. *See, e.g.,* Lamisere Decl., ¶¶ 8-9, 12, 17; Kurosaka Decl., ¶¶ 9-10, 12, 22-23. Care managers are expected to work to the top of their professional licenses, exercising clinical judgment, using specialized medical knowledge, and engaging in critical thinking to assess and manage member care, ***not*** perform the non-exempt duties described in Plaintiffs' declarations. Kurosaka Decl., ¶¶ 6-23; Bennatts Decl., ¶¶ 9-19; Lamisere Decl., ¶¶ 4-17. The Washington Plan, for example, conducts quarterly audits by reviewing two real-world cases from each case manager's caseload to ensure that the case manager is using their specialized medical knowledge and exercising appropriate clinical judgment and independent decision making to properly assess, plan, prioritize, and manage each member's care. *See* Bennatts Decl., ¶ 16; *see also e.g.*, Kurosaka Decl., ¶ 23 (describing non-exempt support positions that help ensure case managers work at the "top of their license").

5

### C. Some "CMEs" Are Classified As Non-Exempt, Which Shows There Is No Common Policy Of Classifying All "CMEs" As Exempt.

To highlight the lack of a common company policy of misclassifying all employees in the alleged "CME" job family as exempt, **many employees falling within this alleged job family were classified as non-exempt**. *See, e.g.,* Henrichsen Decl., ¶ 5 (describing reclassification of positions); Calvert Decl., ¶¶ 6-7, 10 (describing roles of nonexempt employees on care management teams); Kuroska Decl., ¶ 23 (same); Declaration of Lori Mulichak ("Mulichak Decl."), ¶ 20. At least **two Opt-in Plaintiffs were classified as non-exempt** during the relevant period. *See* Docs. 37-41. All CMEs in California have been classified as non-exempt since at least 2015, and **many "CMEs" were reclassified to nonexempt at different times** over the past several years. *See* Henrichsen Decl., ¶ 5; Declaration of John Kight ("Kight Decl."), ¶¶ 7-9.

Here, Plaintiffs point only to "the mere classification of a group of employees," but this "is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice … [because] [i]f it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification." *Colson*, 687 F. Supp. 2d at 927. Centene's state-specific plans have autonomy and are responsible to determine staffing and work assignments of the respective plan's employees. *See e.g.*, Henrichsen Decl., ¶¶ 3-4. Plaintiffs' theory is disproved by the fact that the majority of "CMEs," including Opt-in Plaintiffs, were actually classified as ***non***-exempt. *Id.*, ¶ 5.

"This is not a situation where the Court's examination of the parties' factual submissions and arguments requires the Court to weigh the merits of Plaintiffs' claims"; rather, "the allegations before [the Court] do not provide a colorable basis that all the putative members of the collective action 'sustained injury from one unlawful policy.'" *Saleen v. Waste Mgt., Inc.*, 2009 WL 1664451, at *6 (D. Minn. June 15, 2009), *aff'd*, 649 F. Supp. 2d 937 (D. Minn. 2009) (denying conditional

6

certification because plaintiffs failed to show a common policy by which employees were unlawfully denied compensation). Plaintiffs fail to make even a "modest factual showing … that the proposed class members [*i.e.* "CMEs"] were victims of a single decision, policy, or plan" of misclassification, and the Court should deny their Motion. *Murphy*, 2017 WL 1194455, at *2.

### D. Plaintiffs' Evidence Is Insufficient, And The Proposed Class Is Overbroad.

Plaintiffs present no evidence that employees working for Centene in 22 states were subject to a common misclassification policy. The declarants indicate they have **no knowledge of positions, job duties, or classifications of "CMEs" working in Arizona, Arkansas, California, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, North Carolina, Nebraska, New Hampshire, New Mexico, Nevada, Oregon, Pennsylvania, South Carolina, and Wisconsin**. Conditional certification must be denied where Plaintiffs present no evidence regarding 79 percent of the collective. [4] *See* Henrichsen Decl., ¶ 7.

In *Murphy*, this Court limited conditional certification to only the facility where the plaintiff worked because plaintiff's declaration failed to establish "any personal knowledge regarding the policies or practices at the [other] facility." 2017 WL 1194455, at *4. Similarly, in

---

[4] *See, e.g., Jost v. Cmmw. Land Title Ins. Co*., 2009 WL 211943, at *4 (E.D. Mo. Jan. 27, 2009) (denying conditional certification where "there [wa]s no evidence that supervisors nationwide similarly disregarded" the policy, holding that "[w]here, as here, the 'inappropriate behavior rested on the interpretation and implementation' of regional managers, nationwide certification is inappropriate"); *Wacker v. Personal Touch Home Care, Inc*., 2008 WL 4838146, at *4 (E.D. Mo. Nov. 6, 2008) (denying conditional certification where declarants only had experience working in Missouri and defendant had offices in 13 states, explaining that while the "burden on plaintiffs is not great…where they seek conditional certification of such a broad class, they must provide more than they have provided here"); *Butz v. Amware Distrib. Warehouses of Ga., Inc*., 2014 WL 1513172 (N.D. Ga. Apr. 16, 2014) (denying conditional certification in misclassification case because "[i]t is not enough...to show that several of the facilities have the same description and the same senior managers to infer similarity of operations or policies, especially when each location has a different on-site general manager"); *Anglada v. Linens 'N Things, Inc*., 2007 WL 1552511 (S.D.N.Y. May 29, 2007), report and recommendation adopted (May 22, 2007) ("Plaintiff's extrapolation as to the nationwide condition of all stores based only upon his personal experience in two…stores in New York, without supporting proof, is insufficient to certify a nationwide collective action").

7

*Jost*, the Honorable Catherine D. Perry considered a motion for conditional certification filed against a defendant with 163 offices in 49 states. 2009 WL 211943, at *1. The plaintiffs worked in the St. Louis area, and oversaw only five states. *Id.* Judge Perry found that plaintiffs' evidence only addressed the five states they oversaw, and therefore denied plaintiffs' request for nationwide conditional certification and limited the putative collective action to those states. *Id*., at *1, 5.

Besides the absolute lack of evidence of any policy outside the handful of states where declarants worked, Plaintiffs also provide no evidence of numerous job titles that could fall within the proposed collective. While Plaintiffs cite *Randolph*, in *Randolph* the collective was limited to a smaller group of utilization review nurses. *See Randolph v. Centene Mgt. Co*., 2015 WL 2062609, at *3 (W.D. Wash. May 4, 2015). While Plaintiffs offer job descriptions to support their motion, it is unclear what time period, positons or locations they describe. *See* Doc. 36-1 pp. 4-109; Doc. 36-2 pp. 1-112. Plaintiffs certainly have not provided job descriptions for all of the 30 positions and 28 states they seek to certify. The experience described in Plaintiffs' declarations is limited to only a handful of positions in a few states. Plaintiffs offer no evidence about the experience of employees working in numerous positons Plaintiffs seek to include in their class.

Moreover, "a standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt." *Pickering*, 2012 WL 314691, at *12; *see also Smith v. Heartland Auto. Servs., Inc.,* 404 F. Supp. 2d 1144, 1151 (D. Minn. 2005) (granting decertification, noting "[FLSA plaintiffs] may not rely on the job description itself as generalized evidence that they are [misclassified] as exempt employees"). In *Holt*, the plaintiffs attempted to conditionally certify a nationwide collective of managers and assistant managers, who they alleged had been improperly classified as exempt. 333 F. Supp. 2d 1265. The court found insufficient the fact they were all classified as exempt and all

8

had the same job description. *Id.* at 1271–73. Rather, the court found it must analyze whether evidence regarding the plaintiffs' job duties could be applied to the collective to determine if they were victims of a common misclassification policy. *Id.*

In their Motion, Plaintiffs cite *Pettenato v. Beacon Health Options, Inc.*, 2019 WL 5587335, at *11 (S.D.N.Y. Oct. 25, 2019), but *Pettenato* does not support conditional certification here. In *Pettenato*, the plaintiffs moved to certify a nationwide collective action class comprising "Care Management Employees," which the plaintiffs defined as the job family for a handful of other job titles that could be used interchangeably to refer to plaintiffs' job positions. *Id.* at *2. The court **refused to certify a nationwide collective**, explaining that under *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 Ct. 1773 (2017), the court could not exercise specific personal jurisdiction over the FLSA claims of out-of-state plaintiffs against the defendants. *Pettenato*, 2019 WL 5587335, at *3-6. Based on five declarations from employees who worked for defendants in New York, the court limited conditional certification to New York. *Id.* at *2, 15.

Another case relied on by Plaintiffs, *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 434 (D.N.M. 2018), also does not support nationwide certification. Unlike Plaintiffs' evidence here, the plaintiffs in *Deakin* provided evidence they personally knew of defendant's practices in other states, and observed practices from CMEs "across the country." *Id.* Here, Plaintiffs expressly assert that their knowledge is limited to practices in the state where they worked. *See e.g.*, Doc. 36-3, p. 3, ¶ 11 ("I understand that Defendant has employed hundreds of CMEs in Texas that work/worked under the same or similar conditions."). In any event, *Deakin* is not controlling authority.

Here, it is not a matter of weighing competing evidence. Rather, the only evidence demonstrates that the positions and job duties of members of the proposed collective are extremely

9

varied, and Plaintiffs' evidence simply does not cover the vast majority of the proposed collective.[5]

This chart summarizes the limited experience in the declarations submitted by Plaintiffs:

|  | State Plan | Position |
|---|---|---|
| Amanda Del Toro, Cynthia Chavira, Shana Anderson Greer, Tanisha Kirksey, Teresa Desantis | Texas[6] | Care Manager RN II |
| Tameka Bragg | Texas | Service Coordinator RN |
| Terry Ortego | Louisiana | Care Manager RN II |
| Joslyn McGhee Johnson | Louisiana | Behavioral Case Manager |
| Monique Owe | Georgia | Behavioral Case Manager |
| Barronelle Lewis | Florida | Care Manager RN II |
| Sandra Lusunariz | Florida | **Non-Exempt** Long Term Care Coordinator I |
| Joshua Chromick | Ohio | Behavioral Case Manager |
| Diana Nance | Ohio | Program Specialist II |
| Daniel Werner, Jennifer McGregor-Halstead | New York | Care Manager I, **Not Employed During Limitations Period (McGregor-Halstead)** |
| Jacoba Messman | Washington | Care Manager I, Behavioral Health |

In contrast with the limited knowledge of these declarants (1 or 2 positions per state in only 6 states with Centene employees), the proposed members of the collective action class work across **different health plans in at least 28 states and approximately 30 different job positions**. *See* Henrichsen Decl., ¶¶ 4, 7. The majority of members of the putative collective – **nearly 80%** – worked for independent state health plans of which Plaintiffs' declarants admittedly have no knowledge. There is no dispute: Plaintiffs have no knowledge of most plans, locations, and job positions they seek to include in their overly broad class of "CMEs." Based solely on Plaintiffs' overly broad collective and lack of minimal evidence, the Court should deny Plaintiffs' motion.

---

[5] If the Court were to make credibility determinations, it should find Plaintiffs' proffered evidence non-credible. Plaintiffs' declarations contain identical verbiage mirroring FLSA regulations (suggesting they were drafted entirely by Plaintiffs' counsel), and contain demonstrably false statements. For example, Opt-in Plaintiff Lusunariz swears she was classified as exempt and not paid overtime (Doc. 36-3, p. 43 ¶ 10); however, she was actually classified as ***non-exempt*** as of July 2016, and received 25.18 hours of overtime pay (Doc. 41, ¶ 4). Further, the declarations uniformly claim to have performed the job duties of a utilization review worker, not a case manager, which calls into question whether the declarants actually provided the descriptions. *See, e.g.,* Lamisere Decl., ¶¶ 4-6; Kurosaka Decl., ¶¶ 7-9; Bennatts Decl., ¶¶ 8-9.

[6] Centene has no authority to hire or fire "CMEs" in Texas, promulgate work rules and assignments, determine pay or supervise "CMEs" in Texas. *See* Henrichsen Decl., ¶ 8. Thus, the Texas plan must be excluded from the scope of this action. *See e.g., Halsey v. Casino One Corp.,* 4:12CV1602 CDP, 2012 WL 6200531, at *4 (E.D. Mo. Dec. 12, 2012). Without waiving its defense that it did not employ care managers in Texas, Centene provides information in response to Plaintiffs' Motion.

### E.     Even Within A Narrowed Collective, The Need For Individualized Inquiries Makes Collective Treatment Inappropriate.

Putting aside the issue of Plaintiffs' inadequate evidence and the overbroad collective, Plaintiffs' motion fails to identify "a single decision, policy, or plan" that will be dispositive of their claims. *Murphy*, 2017 WL 1194455, at *2. Exempt classification of a particular class of employees does not eliminate the need to make a factual determination of whether the individuals are actually performing similar duties. *See, e.g., Colson*, 687 F. Supp. 2d at 927 ("[T]he mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes").

Courts routinely decline to certify collective actions, even under a first stage analysis, due to the primacy of the individualized issues necessary to determine exempt status. *See, e.g., Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1232 (W.D. Mo. 2007) (denying conditional certification, gathering cases and finding that where the proposed collective does not consist of a single job title, job description, or exemption rationale, conditional certification is inappropriate).[7]

Further, the job duties and educational qualifications for "CMEs" are extremely varied. For

---

[7] *See also, e.g., Arceneaux v. Fitness Connection Option Holdings, LLC*, 2017 WL 5749608, at *8 (S.D. Tex. Nov. 28, 2017) (denying conditional certification, noting that while plaintiffs need not have "identical" job duties, where there are "material distinctions" in job duties, this goes to the "heart of Plaintiffs' misclassification claim"); *Herrera v. Mattress Firm, Inc.*, 2017 WL 4270619, at *7 (S.D. Fla. Sept. 26, 2017) (denying conditional certification in misclassification case because differences in circumstances would require an "individualized assessment" which "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification"); *Ahmed v. T.J. Maxx Corp.*, 2014 WL 5280423 (E.D.N.Y. Sept. 24, 2014) (denying conditional certification where "the testimony of the potential opt-ins...demonstrates variances in the responsibilities of ASMs from store to store undermining [the plaintiff's] assertion that ASM duties were defined by a nationwide plan or policy"); *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-15 (N.D. Ind. 2005) (denying conditional certification because FLSA exemptions depend on each employee's specific duties); *Prince v. Cato Corp.*, 2015 WL 1040713 (N.D. Ala. Mar. 10, 2015) (denying conditional certification because of unreliable declarations from a limited group and the need to analyze individualized job duties in a misclassification case).

11

example, duties vary depending on the health plans, products, and member populations—each population "must be served in a unique manner depending on their health care needs." Declaration of Laquanda Brooks ("Brooks Decl."), ¶ 3. *See, e.g.,* Kurosaka Decl., ¶ 16 (different considerations for assessing member with heart condition); Lamisere Decl., ¶ 15 (different considerations in discharge planning for diabetic members); *id.*, ¶¶ 13-14 (Florida nurse case managers on specialized team for sickle cell populations); Declaration of Noemi Smithroat ("Smithroat Decl."), ¶ 9 (complex care managers in Texas STAR+PLUS programs who serve members in crisis); Kight Decl., ¶ 12 (behavioral case managers in Georgia who perform Pre-Admission Screening and Resident Review of nursing home applicants with severe mental health issues); *id.*, ¶ 10 (care managers in Louisiana assigned to special project teams with different caseloads and evaluation criteria); Brooks Decl., ¶ 11 (differences between telephonic and field case managers in Georgia); Calvert Decl., ¶ 14 (different levels of contact with members in Texas STAR and CHIP programs depending on member acuity and conditions); Mulichak Decl., ¶¶ 14-15 (discretion exercised by care managers under Ohio Medicaid contract because duties depend on members' needs).

Contrary to Plaintiffs' claims that job titles are "arbitrary," the different job positions "involve different job duties, job focuses and levels of responsibility, and require different professional education, licensure, training and experience." Bennatts Decl., ¶ 8. Duties vary widely among these different positions. *See, e.g.,* Brooks Decl., ¶ 12 (Program Specialists in Georgia work under the direction of Care Manager (RNs)); Lamisere Decl., ¶ 15 (discharge planning performed by RN in Florida for member with complex medical condition); Mulichak Decl., ¶ 22 (discharge planning performed by Program Specialist in Ohio; Program Specialists do not carry caseloads); Kight Decl., ¶ 6 (Care Manager (Social Worker) in Louisiana conducts assessments and develops care plans for low-acuity members but escalates to Care Manager (RN) when cases become

12

complex); Kight Decl., ¶¶ 8-9 (Behavioral Case Manager in Louisiana assesses and plans care for mental health conditions only, and Behavioral Care Coordinator performs administrative duties); Mulichak Decl., ¶ 20 (describing delegation and supervision of duties by Care Manager (RN) as governed by Ohio nursing regulations); Calvert Decl., ¶ 11 (Senior Care Managers are team leads).

Some "CME" positions require a Registered Nurse to perform the duties, while others require a Registered Nurse or Nurse Practitioner or Physician Assistant, while still others require specific behavioral health or social work post-secondary degrees and licensing, and these qualifications vary by state because of contractual requirements and nursing license regulations. *See, e.g.,* Kurosaka Decl., ¶ 10 (case managers managing physical health conditions in New York required to have RN and case managers managing social or mental health issues required to have bachelor's degree in social work, psychology, or related field); Lamisere Decl., ¶ 8 (contrasting duties of RN and LPN case managers); Bennatts Decl., ¶ 8 (describing limitations in duties performed by non-RNs because of state nursing practice act); Calvert Decl., ¶ 10(c) (LVN or social worker can be "secondary" but not "primary" case owner in Texas STAR and CHIP programs); Smithroat Decl., ¶¶ 7-8, 11, 13 (discussing specific requirements for educational degrees and professional licenses in Texas STAR+PLUS contracts based on member conditions and acuity); Mulichak Decl., ¶¶ 16-19 (describing Ohio's change in staffing model under Medicare/Medicaid contract and requirement for RN to manage each case because of member complexity).

Centene's declarations preview a few of the factual differences in just the 7 states referenced by Plaintiffs' declarants. Where, as here, the record indicates that "CMEs" work in different positions in different states under different management teams and different requirements, "a collective action certified on the facts presented thus far would be mired in particularized determinations of liability and damages, rather than collective consideration of

13

common questions of law and fact." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying conditional certification where "the plaintiffs have presented a vast universe of potential members of the class" and the "declarations represent a much smaller set of injured workers").[8]

Against this backdrop, Plaintiffs must show that Centene **uniformly *mis*classified all exempt "CMEs."** Notwithstanding the conclusory assertions in Plaintiffs' declarations, Centene's detailed declarations confirm the tremendous diversity of qualifications and *exempt* duties across "CMEs" who work in different states and positions. Plaintiffs' own statements in their performance reviews (which are in their own words—not the words of Plaintiffs' counsel) also highlight the individuality of their positions, and provide examples of Plaintiffs doing the opposite of what they claim in their declarations. *See* Henrichsen Decl., Exs. 1-6. The myriad individualized inquiries necessary to determine whether individual Centene "CMEs" were, in fact, performing exempt duties render collective action treatment inappropriate. *See, e.g., Hinojos v. The Home Depot, Inc.,* 2006 U.S. Dist. LEXIS 95434, at **8-9 (D. Nev. Dec. 1, 2006) ("resolution of plaintiffs' claims depends on the specific employment conditions in each store and department in

---

[8] *See also, e.g., Douglas v. Xerox Business Services, LLC*, 2014 WL 3396112 (W.D. Wa. Jul. 10, 2014) (denying conditional certification of one proposed class that spanned different clients and supervisors); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying conditional certification where factual inquiries involved different managers at different locations nationwide). Determination of Plaintiffs' FLSA claims will require a detailed evaluation of whether each "CME" was employed in a bona fide professional, administrative, executive, and/or combination capacity—*i.e.,* whether their primary duties involved work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of study (professional); or managing a recognized department or subdivision, regularly supervising two or more full time employees, and making recommendations as to hiring, firing, promotion of other employees (executive); or alternatively (or in combination), non-manual work related to the management of Centene's business or the business of its customers, and the exercise of discretion and independent judgment (administrative). *See* 29 C.F.R. § 541.300 (learned professional exemption); *id.*, § 541.200(a) (administrative exemption); *id.*, § 541.100 (executive exemption); *id.*, § 541.708 (combination exemption). "Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" *Diaz v. Electronics Boutique of Am., Inc*., 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) (citation omitted).

which each class member worked,…making collective action treatment impractical and unmanageable"); s*ee also Holt*, 333 F. Supp. 2d at 1275 (the need for individualized inquiries eliminates "the economy of scale envisioned by the FLSA collective action procedure").

Plaintiffs' nearly identical "pattern" declarations include no details about their actual day-to-day work activities, but instead simply mimic the terminology used in the FLSA regulations. *See e.g*., Doc. 36-3. When faced with similar conclusory allegations, courts have routinely denied motions for conditional certification. *See e.g., Colson,* 687 F. Supp. 2d at 928.

Plaintiffs identify no "unified policy, plan or scheme of FLSA violations." *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). Plaintiffs have presented absolutely no evidence on the vast majority of state plans and job positions which they seek to certify. Even if the collective action were narrowed, Plaintiffs have not demonstrated any common company-wide policy of misclassifying all "CMEs" as exempt. The Court should deny Plaintiffs' Motion.

## III. THE COURT SHOULD REJECT PLAINTIFFS' PROPOSED NOTICE.

Should the Court grant Plaintiffs' Motion (which Centene adamantly opposes), Centene respectfully requests an opportunity to meet and confer with Plaintiffs' counsel regarding the content and method of distributing notice. For example, Centene would require at least 14 days to produce contact information. Centene also opposes Plaintiffs' proposal to send redundant and harassing mail, email, and text messages, which poses risks such as invasion of privacy and could be interpreted as encouragement by the Court to join the lawsuit. *See e.g.,* Telephone Consumer Protection Act of 1991, 47 U.S. C. § 227(b)(1)(A)(iii) (requiring express written consent from individuals prior to initiating cell phone communications where the individual may be charged).

## IV. CONCLUSION

For the foregoing reasons, Centene respectfully requests this Court deny Plaintiffs' Motion.

Dated: February 21, 2020

Respectfully Submitted,

*/s/ Patricia J. Martin*
Patricia J. Martin #57420 MO
LITTLER MENDELSON, P.C.
600 Washington Ave., Suite 900
St. Louis, MO 63101
314.659.2000
314.659.2099 FAX
pmartin@littler.com

*/s/ Breanne S. Martell*
Breanne S. Martell, WA Bar #39632
(Admitted *Pro Hac Vice*)
Douglas E. Smith, WA Bar #17319
(Admitted *Pro Hac Vice*)
Alyesha A. Dotson, WA Bar #55122
(Admitted *Pro Hac Vice*)
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
Phone: 206.623.3300
Fax: 206.447.6965
desmith@littler.com
bsmartell@littler.com
adotson@littler.com

**ATTORNEYS FOR DEFENDANT**
**CENTENE MANAGEMENT COMPANY, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 21st day of February, 2020, a true and correct copy of the above and foregoing Defendant's Response in Opposition to Plaintiffs' Motion for Step-One Notice Pursuant to the Fair Labor Standards Act was electronically filed with the court using the CM/ECF system, which sent notification to all parties in interest participating in the CM/ECF.

*/s/ Breanne S. Martell*