**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMANDA DEL TORO, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CENTENE MANAGEMENT CO, LLC, )<br>)<br>Defendant. )<br>) | Case No. 4:19-cv-02635-JAR |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Step-One Notice.  (Doc. 35.) Defendant Centene Management Company, LLC ("Centene") has responded in opposition (Doc. 42), and Plaintiffs have replied (Doc. 52).

## **Background**

Defendant Centene is "a diversified, multi-national healthcare enterprise" and "the largest Medicaid Managed Care Organization in the country."  *Who We Are*, CENTENE.COM, https://www.centene.com/who-we-are.html (last visited Apr. 28, 2020).  Plaintiffs are a proposed collective of Care Management Employees ("CMEs")—case managers, care coordinators, and program specialists—employed by Centene to  provide managed care[1] services on behalf of Centene. (Doc. 35 at 1.)   Plaintiffs allege that Centene "primarily conducts business through its various Subsidiaries, which contract with federal and state agencies to provide."  (Doc. 21 at ¶ 3.)

---

[1] Managed care is an arrangement for providing health benefits and additional services through contracted arrangements with healthcare service providers.  *Managed Care*, MEDICAID.GOV, https://www.medicaid.gov/medicaid/managed-care/index.html (last visited Apr. 15, 2020).

1

They identify thirty-two[2] states in which Centene subsidiaries operate.  (*Id.* at ¶ 6 (citing *Browse by State*, CENTENE.COM, https://www.centene.com/products-and-services/browse-by-state.html).)

Plaintiffs allege that although their job duties are nearly identical, Centene utilizes an assortment of arbitrary job titles designed to obfuscate the fact that CMEs are being intentionally misclassified under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and New York and Ohio labor law as overtime-exempt employees.  (Doc. 21 at ¶¶ 13-17.)  Specifically, Plaintiffs argue that Centene improperly classifies them under the Learned Professional and Administrative exemptions.  (Doc. 36 at 1.)

Plaintiffs assert that CMEs' job duties include a significant amount of "Care Management Work" such as:

> collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendant's computer system (data input); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by performing ministerial tasks, including arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); supplying insured individuals with additional information to educate them about their health plans and community resources (education); and other similar work.

(Doc. 36 at 4.)  They argue that these duties do not meet the statutory definition of nursing work, which includes providing care in a clinical setting and exercising clinical judgment.  (*Id.*)

Asserting that CMEs' job duties are standardized across locations and that they were uniformly misclassified, Plaintiffs ask the Court to conditionally certify a collective defined as:

> All individuals employed by Defendant as Care Management Employees in the last three years who were paid a salary and were classified as exempt from overtime ("Putative Collective Action Members").

---

[2] Plaintiffs list only thirty-one states in their First Amended Class and Collective Action Complaint but Centene's website lists thirty-two.  *See Browse by State*, CENTENE.COM, https://www.centene.com/products-and-services/browse-by-state.html (last visited Apr. 28, 2020).

(*Id.* at 7.) The definition specifically excludes anyone who filed a consent to join *Rotthoff v. New York State Catholic Health Plan, Inc.*, Case No. 1:19-cv-4027-AMD-CLP (E.D.N.Y.); *Gudger v. Centene Mgmt. Co., LLC*, Case No. 2:17-cv-14281 (S.D. Fla.); or *Linnear v. Illinicare Health Plan, Inc.*, 1:17-cv-7132 (N.D. Ill.). (*Id.*)

Centene responds that Plaintiffs "identify no company-wide policy of misclassifying 'CMEs'" and that any CME who does not perform exempt duties represents an "isolated departure from Centene's lawful policy." (Doc. 42 at 1.) It adds that "[m]any 'CMEs' are classified as *non-exempt*, including several Opt-in Plaintiffs, indicating there is no uniform policy." (*Id.*) Finally, it argues that Plaintiffs' proffered declarations relate to a tiny proportion of CMEs and that, if a collective is certified, the result will be "countless mini-trials to determine whether any individual failed to perform the professional case management position they were hired, paid, and expected to perform." (*Id.*)

## Legal Standard

To proceed as a class, the plaintiff must show that the prospective class members are "similarly situated." 29 U.S.C. § 216(b); *Kautsch v. Premier Comm'ns*, No. 06-CV-04035-NKL, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008). Similarly situated "does not necessarily mean identical." *Arnold v. Directv, LLC*, No. 4:10-CV-352-JAR, 2017 WL 1251033, at *2 (E.D. Mo. Mar. 31, 2017). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded*, 136 S. Ct. 1036 (2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

3

Courts in this circuit typically apply a two-step certification process in proposed class actions. *Chankin v. Tihen Commc'ns, Inc.*, No. 4:08CV196HEA, 2009 WL 775588, at *1 (E.D. Mo. Mar. 20, 2009). At the first stage, conditional certification, courts typically apply a lenient standard that requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Beasely v. GC Servs. LP*, 270 F.R.D. 442, 444 (E.D. Mo. 2010) (quoting *Davis v. NovaStar Mort., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). "Plaintiffs' burden at this stage is not onerous" and the court "do[es] not reach the merits of their claims." *Id*. (citing *Kautsch v. Premier Comm'ns,* 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). Then, at the second stage—near or after the close of discovery—"the court makes a factual determination as to whether the members of the conditionally certified class are similarly situated" and makes the associated legal determination as to whether the members may proceed as a formal class. *Davis*, 408 F. Supp. 2d at 815.

## Discussion

Plaintiffs argue that, across the country, Centene's "salaried CMEs (1) performed Care Management Work, (2) regularly worked over 40 hours per week , and (3) were subjected to the same policy which misclassified them as exempt and paid then a salary without overtime." (Doc. 36 at 9.) They argue that this is sufficient to make "the modest factual showing required to issue notice." (*Id.* at 10.) In support, Plaintiffs proffer seventeen sworn declarations from CMEs working in seven different states. (Doc. 36-3 at  1-68.)

Centene responds that its CMEs provide services to fourteen million members in dozens of states under health plans that are each managed by "a separate and independent subsidiary of Centene Corporation, with its own Chief Executive Officer and independent management structure." (Doc. 42 at 4.) It asserts that "[e]very health plan operates differently, offers different

4

managed care and insurance products to different member populations, and is subject to different regulatory and contractual requirements." (*Id.*) Moreover, each health plan determines its own case management assignments and day-to-day job duties based on "where the 'CMEs' work, the products to which they are assigned, the local plan policies and practices, the members they serve, their professional licensure and particular specialties, the management philosophies of their managers, and other diverse factors." (*Id.*)

Citing the "[p]erson-centered case management" that CMEs provide, Centene further asserts that a CME's job duties vary widely based on a given health plan member's environment, health and social goals, care plan, clinical interventions, medications, and follow-up needs. (*Id.* at 4-5.) Put simply, Centene argues that CMEs' job duties depend on too many factors to allow Plaintiffs to proceed as a class.

In addition, Centene argues that it expects its exempt CMEs to perform exempt functions and that those CMEs whose daily job duties do not meet the standard for exempt salaried employees are falling short of that expectation. (*Id.* at 5.) To that point, Centene asserts that some CMEs are classified as non-exempt where the needs and expectations of the health plan does not necessitate the full application of their licensed capabilities. (*Id.* at 6.) For instance, "[a]ll CMEs in California have been classified as non-exempt since at least 2015." (*Id.* at 6.)

In reply, Plaintiffs reiterate the low standard for conditional certification and assert that Centene's argument attempts to apply the more onerous second step prematurely. (Doc. 52.) They argue that their allegations, supported by sworn declarations, are enough. (*Id.*)

Based on the factual record before it, the Court concludes that Plaintiffs have provided "modest factual support" for their allegations that a class of similarly situated employees likely exists based on a single, potentially FLSA-violating policy that, if proven, would give rise to class-

5

wide liability.  *See Bouaphakeo*, 765 F.3d at 796.  Specifically, Plaintiffs offer evidence in the form of sworn declarations that CMEs perform their daily job duties, regardless of location or division, "in accordance with [Centene's] policies and procedures and the guidelines embedded in [Centene's] software" and that they "could not significantly deviate from these guidelines." (Doc. 36 at 5.)  In addition, Plaintiffs allege that CMEs' work does not involve providing nursing care or exercising clinical judgment and that they "performed the same non-clinical work regardless of whether they held a specific degree or held [nursing] certifications." (Doc. 36 at 4-5 (citing 36-3 at 1-68).)

That said, the Court concludes that Plaintiffs have failed to proffer sufficient factual support for a nationwide class.  To begin, Plaintiffs' sworn declarations relate to only seven states—Texas, Louisiana, Georgia, Florida, Ohio, New York, and Washington—and only six different job titles—Care Manager RN II; Service Coordinator RN; Behavioral Case Manager; Long Term Care Coordinator I; Care Manager I; and Care Manager I, Behavioral Health.  (*See* Doc. 42 at 10 (summarizing Plaintiff's declarations).)  As such, Plaintiffs fail to assert any affirmative knowledge about the daily job duties of hundreds of potential class members holding dozens of other job titles in dozens of other states.  Likewise, Plaintiffs have experience with only about one fifth of the Centene subsidiaries who employ would-be members of the class. (Doc. 42 at 10.)  Without more, the Court does not believe Plaintiffs have made "substantial allegations that they [and putative class members from other states] were together the victims of a single decision, policy or plan." *Beasely*, 270 F.R.D. at 444.  That Plaintiffs proffered sworn declarations from would-be class members who were not classified as exempt gives the Court further pause regarding the institution of a nationwide class.  The Court will therefore allow Plaintiffs to proceed as a class limited to the seven states in which the declarants have direct experience.

6

The Court will not limit the class to the job titles represented by declarants at this early stage of the proceeding.  Although the Court concludes that the state-to-state differences between independent subsidiaries are sufficiently significant to eliminate those not represented by a sworn declaration, the Court accepts Plaintiffs' allegations that differences within a given subsidiary are much less significant.  Moreover, Plaintiffs' claims are premised in large part on Centene's alleged use of arbitrary job titles to skirt overtime requirements.  To that end, Plaintiffs directly allege that there are no significant differences in daily work duties between CMEs with different titles.  The Court recognizes Centene's argument to the contrary but notes that, at this early stage, Plaintiff's substantial allegations are sufficient to proceed to discovery as to a narrowed class. *Beasely*, 270 F.R.D. at 444 (E.D. Mo. 2010).

Accordingly, the Court will grant Plaintiffs' motion in part and will conditionally certify a class defined as:

> All individuals employed by Defendant as Care Management Employees in Texas, Louisiana, Georgia, Florida, Ohio, New York, or Washington in the last three years who were  paid a salary and were classified as exempt from overtime ("Putative Collective Action Members"). This definition specifically excludes all individuals who have filed consents to join any of the following cases:  *Rotthoff v. New York State Catholic Health Plan, Inc. et al.*, Case No. 1:19-cv-4027-AMD-CLP (E.D.N.Y.); *Gudger v. Centene Mgmt. Co., LLC et al.*, Case No. 2:17-cv-14281 (S.D. Fla.); or *Linnear v. Illinicare Health Plan, Inc.*, 1:17-cv-7132 (N.D. Ill.).

## Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Step-One Notice (Doc. 35), is **GRANTED in part.**  The Court conditionally certifies a class as defined above.

**IT IS FURTHER ORDERED** that the parties shall meet and confer to address any objections to Plaintiffs' proposed timing and method for notice.  Centene shall, **within fifteen (15) days of the date of this order**, submit to the Court in writing any unresolved objections.

Dated this 30th day of April, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE