**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **AMANDA DEL TORO, DANIEL WERNER, JENNIFER MCGREGOR-HALSTEAD, JOSHUA CHROMICK, AND ALL OTHERS SIMILARLY SITUATED,** | |
| *Plaintiffs*, | **Civil Action No. 4:19-cv-02635** |
| **v.** | |
| **CENTENE MANAGEMENT COMPANY, LLC,** | |
| *Defendant*. | |

**PARTIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT, FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR, FOR APPROVAL OF SERVICE AWARDS, AND FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .........................................2

        A.     Factual Allegations................................................................................2

        B.     Overview of Investigation, Litigation, and Settlement Negotiations..........4

               1.     Procedural History of the Litigation & Investigation ....................4

               2.     Exchange of Documents and Information.....................................5

               3.     The Parties Successfully Resolved the Claims through
                      Mediation.................................................................................6

III.    SUMMARY OF THE SETTLEMENT TERMS .................................................7

        A.     The Settlement Fund..............................................................................7

        B.     Settlement Class Members and Distribution of Settlement Checks............7

        C.     Release for the Named Plaintiffs, Opt-in Plaintiffs, and
               Participating Settlement Class Members .................................................8

        D.     Calculation of Individual Settlement Payments, Tax Treatment,
               and Unclaimed Settlement Funds...........................................................8

        E.     Service Awards and Attorneys' Fees and Litigation Costs ......................9

IV.     THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND
        SHOULD BE APPROVED BY THE COURT .................................................9

        A.     The Proposed Settlement Resolves a Bona-Fide Dispute Between
               the Parties............................................................................................10

        B.     The Proposed Settlement is Fair and Equitable to All Parties ................12

               1.     The Stage of the Proceedings ....................................................13

               2.     The Amount of Discovery Engaged in by the Parties...................13

               3.     The Experience of Plaintiffs' Counsel .......................................13

               4.     The Reasonableness of the Settlement Amount Based on
                      the Probability of Plaintiffs' Success with Respect to any
                      Potential Recovery ....................................................................15

V.      PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND
        EXPENSES ARE REASONABLE ................................................................17

        A.     The FLSA Allows for Payment of a Reasonable Attorney's Fee. ............17

i

B.    A Reasonable Attorney's Fee Using the "Percentage of the Benefit" Approval. ...................................................................17

C.    Other Factors Support the Requested Fees. ...............................19

D.    Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check. .........................................19

E.    Class Counsel's Requested Expenses Are Reasonable. ...........................20

**VI.    THE REQUESTED SERVICE PAYMENTS ARE REASONABLE ............20**

**VII.    CONCLUSION ..............................................................................23**

**Cases**

*Barbee v. Big River Steel, LLC*
  927 F.3d 1024 (8th Cir. 2019) ........................................................................9, 18

*Beesley v. Int'l Paper Co.*
  No. 06 C 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .....................................21

*Berry v. Best Transportation, Inc.*
  No. 4:16-CV-00473-JAR, 2020 WL 512393 (E.D. Mo. Jan. 31, 2020) ...........10, 12

*Caligiuri v. Symantec Corp.*
  855 F.3d 860 (8th Cir. 2017) .............................................................................22

*Chatfield v. Children's Services, Inc*.
  555 F. Supp. 2d 532 (E.D. Penn. 2008).............................................................11

*Clark v. Centene Co. of Texas, L.P.*
  44 F. Supp. 3d 674 (W.D. Tex. 2014) ................................................................11

*Donoho v. City of Pac., Missouri*
  No. 4:19-CV-186 NAB, 2019 WL 5213023 (E.D. Mo. Oct. 16, 2019)..................10

*Espenscheid v. DirectSat USA, LLC*
  688 F.3d 872 (7th Cir. 2012) .............................................................................21

*Ezell v. Acosta, Inc.*
  No. 4:16CV870 RLW, 2019 WL 8160704 (E.D. Mo. Apr. 4, 2019) .....................12

*Harvill v. Phelps County Restaurant LLC*
  No. 4:14-cv-1444-JAR (E.D. Mo. July 31, 2015) ................................................18

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) .....................................................................................17, 18

*Huyer v. Buckley*
  849 F.3d 395 (8th Cir. 2017) .............................................................................17

*In re St. Paul Travelers Sec. Litig.*
  No. CIV. 04-3801 JRTFLN, 2006 WL 1116118 (D. Minn. Apr. 25, 2006) ...........20

*In re U.S. Bancorp Litig.*
  291 F.3d 1035 (8th Cir. 2002) ...........................................................................17

*Johnson v. Thomson Reuters*
  No. 18-cv-0070, No. 2019 WL 1254565, n.1 (D. Minn. Mar. 19, 2019)...............10

*Jones v. Synergies3 Tec Services*
  No. 4:18-cv-01161-JAR, 2018 WL 6727061 (E.D. Mo. Dec. 21, 2018).................10

iii

*Keil v. Lopez*
862 F.3d 685 (8th Cir. 2017) ...................................................................................19

*King v. Raineri Const., LLC*
No. 4:14-CV-1828 CEJ, 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) ....................................12

*Lynn's Food Stores, Inc. v. U.S.*
679 F.2d 1350 (11th Cir. 1982) ...............................................................................16

*Martin v. Safe Haven Sec. Servs., Inc.*
No. 19-CV-00063-ODS, 2020 WL 4816418 (W.D. Mo. Aug. 19, 2020) ..............................22

*Matheson v. T-Bone Rest.*, LLC
2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ..................................................................22

*Mayberry v. SSM Health Businesses*
No. 4:15-CV-1680-CEJ, 2017 WL 2334981 (E.D. Mo. May 30, 2017)................................15

*McClean v. Health Sys., Inc.*
No. 6:11-CV-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015)............................22

*Melgar v. OK Foods*
902 F.3d 775 (8th Cir. 2018) .......................................................................... 10, 18

*Netzel v. West Shore Group, Inc.*
2017 WL 1906955 (D. Minn. May 8, 2017) ...........................................................20, 21

*Nobles v. State Farm Mut. Auto. Ins. Co.*
No. 10-04175-CV-C-NKL, 2014 WL 12616695 (W.D. Mo. Mar. 4, 2014)...........................23

*Osman, et al. v. Grube, Inc*
No. 3:16-CV-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) ..............................13

*Sanchez v. Roka Akor Chicago LLC*
No. 14 C 4645, 2017 WL 1425837 (N.D. Ill., Apr. 20, 2017) .................................14

*Shanks v. St. Louis Cty.*
No. 4:14CV1599 HEA, 2016 WL 659103 (E.D. Mo. Feb. 18, 2016) ....................................15

*Stainbrook v. Minnesota Dep't of Pub. Safety*
239 F. Supp. 3d 1123 (D. Minn. 2017) ...........................................................................10

*Stull v. Kraft Foods Glob., Inc.*
No. 2:09-CV-04187-NKL, 2010 WL 11618790 (W.D. Mo. Nov. 8, 2010) ...........................23

*Tussey v. ABB, Inc.*
850 F.3d 951 (8th Cir. 2017) ...................................................................................22

*Unruh v. Humana Insurance Company*
  No.  17-c-1782,  2019  WL 4648934 (N.D. Ill. Sept. 24, 2019)................................................11

*Willix v. Healthfirst, Inc.*
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...........................................................................22

**Statutes**
Fair Labor Standards Act ......................................................................................................passim

I.    **INTRODUCTION**

Named Plaintiffs Amanda Del Toro, Daniel Werner, Jennifer McGregor-Halstead, and Joshua Chromick, on behalf of themselves, the 13 Opt-In Plaintiffs, and the putative collective action members under Section 16(b) of the Fair Labor Standards Act, and Centene Management Company, LLC ("Defendant") have reached a settlement in this lawsuit (the "Action"). The settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging information and payroll records and participating in two full-day mediations on October 21, 2020 and December 9, 2020 with Mediator Frank Neuner. The terms of the settlement are fair and reasonable to all Parties and Settlement Class Members.[1]

The Parties' settlement resolves the claims of the Named Plaintiffs, the Opt-In Plaintiffs, and the claims of all other Settlement Class Members who choose to become Participating Settlement Class Members by negotiating their Settlement Checks.  After approval, the Settlement Administrator will issue Settlement Checks to all Named Plaintiffs, Opt-in Plaintiffs and 1,211 other Settlement Class Members. Participating Settlement Class Members will release claims that were or could have been asserted based on the facts or circumstances alleged in the Second Amended Complaint against Defendant and the other Released Parties as stated in the Agreement. Settlement Class Members who did not previously join the Action as an Opt-in Plaintiff and who do not cash their Settlement Checks will *not* release any claims against Defendant.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, the Parties respectfully request

---

[1] All capitalized terms are defined in the Settlement Agreement.

1

the Court approve their Confidential Settlement Agreement (herein "Settlement Agreement"), attached as Exhibit 1,[2] and appoint Rust Consulting as the third-party Settlement Administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Defendant in this case is Centene Management Company, an entity that provides administrative and business support for subsidiaries of Centene Corporation.  Second Amended Collective Action Complaint ¶ 4, ECF No. 74. Centene subsidiaries provide managed healthcare products and services through Medicaid, Medicare, and commercial health insurance, and Defendant is the employer of most health plan employees. *See Id.* ¶¶ 3-5.  Named Plaintiffs worked as Care Management Employees, Del Toro in Texas, Werner and McGregor-Halstead in New York, and Chromick in Ohio. *Id.* ¶¶ 21-24. The additional Plaintiffs who opted into this case also worked as Care Management Employees. Exhibit 2, Declaration of Maureen A. Salas ¶ 8, (herein, "Salas Decl. ¶_").

Plaintiffs allege that Care Management Employees primarily performed non-exempt job duties including collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendant's computer system (data input); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by performing ministerial tasks, including arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); supplying insured individuals with additional information and resources to allow them to educate themselves about their health plan (education); and other

---

[2] The Parties are publicly filing a redacted version of the settlement agreement and filing the entire agreement under seal consistent with the order entered by this Court on April 5, 2021. ECF No. 78.

similar work. Second Amended Collective Action Complaint ¶ 12, ECF No. 74. Plaintiffs further allege that as part of their job duties, Care Management Employees did not exercise independent clinical judgment, did not provide traditional nursing care in a clinical setting, and did not provide medical care to members. *Id.* at ¶¶ 49-56. And Plaintiffs allege that Care Management Employees regularly worked more than 40 hours per week and were not paid overtime at one and one-half times their regular rates. *Id*. at ¶¶ 57-69.

Plaintiffs claim that because Defendant's Care Management Employees primarily performed non-exempt work, Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay Care Management Employees overtime wages when they worked over 40 hours per week. *Id.* at ¶¶ 59-66. The Named Plaintiffs brought their FLSA claims individually and collectively on behalf of other individuals employed by Defendant as Care Management Employees.

Defendant does not admit any liability, denies any wrongdoing and denies that Plaintiffs and Settlement Class Members are entitled to any damages. Def's. Answer to First Amended Collective Action Complaint ¶¶ 114-48, ECF No. 27. Defendant denies any and all allegations relating to this matter, including, among other things, denial that Plaintiffs accurately described their job duties, that Plaintiffs primarily performed non-exempt work, that Plaintiffs regularly worked more than 40 hours per week, and that Defendant failed to pay overtime wages or that it otherwise violated its legal obligations. *Id.* Defendant asserted affirmative defenses, including statutory exemptions under the FLSA, contending that Care Management Employees are exempt under the executive, administrative, and/or professional exemption of the FLSA and are not entitled to overtime wages. *Id.*, Fourth Affirmative Defense.

3

### B.  Overview of Investigation, Litigation, and Settlement Negotiations

#### 1.  Procedural History of the Litigation & Investigation

Named Plaintiffs filed this Action on September 25, 2019. Complaint, ECF No. 1.  After the Parties conferred about the scope of the Complaint, Named Plaintiffs filed their First Amended Complaint on October 31, 2019. ECF No. 21.  Defendant answered the First Amended Complaint on November 27, 2019. ECF No. 27. The Court entered a Case Management Order on January 10, 2020, providing for a discovery deadline of December 11, 2020. *See* ECF No. 34. Plaintiffs field their Motion for Step-One Notice Pursuant to the Fair Labor Standards Act on January 22, 2020.  ECF No. 35.  The Court granted that Motion in part on April 30, 2020, ordering notice of the lawsuit to go out to Care Management Employees in Texas, Louisiana, Georgia, Florida, Ohio, New York and Washington. *See* ECF No. 56. The Court directed the Parties to meet and confer to address objections to Plaintiffs' proposed timing and method of notice, and set a May 22, 2020, deadline for Defendant to submit any unresolved objections to the Court.  *Id.*

The Parties had discussed the possibility of early resolution prior to the court's April 30th order, and they renewed those communications following the Court's order.  Ex. 2, Salas Decl. ¶ 11. On May 22, 2020, the Parties informed the Court of their agreement to stay the case for a period of 164 days to attempt to reach a resolution.  ECF No. 61.  This stay included a stay of any notice going out to the conditionally certified collective. *Id.*   The Parties informed the Court that they would conduct an informal exchange of documents, perform potential damage calculations, and participate in private mediation to facilitate a settlement. *Id.* The Parties further agreed that in connection with the stay, the statute of limitations for any claim under the FLSA of any potential opt-in plaintiff would be tolled from April 30, 2020 until the Parties filed a further

Joint Status Report with the Court. *Id.* The Court granted the Parties' request for a stay and for tolling of potential opt-in plaintiffs' claims. Though Notice of the Lawsuit was never issued due to the success of the mediation sessions, thirteen employees in addition to the Named Plaintiffs filed Consent to Join Forms, became Opt-In Plaintiffs, and remain in the Action today.  Ex. 2, Salas Decl. ¶¶ 8, 10.

### 2. Exchange of Documents and Information

Plaintiffs served interrogatory requests and document requests on Defendant on April 22, 2020. Ex. 2, Salas Decl. ¶ 9. Defendant served document requests on Named Plaintiffs on April 29, 2020. *Id.*  The case was stayed prior to any party serving their written discovery responses. *Id.,* ¶ 12. In preparation for the mediation, however, the Parties engaged in an informal exchange of relevant documents and information. *Id.*  Defendant produced to Plaintiffs an Excel spreadsheet containing over 40,000 lines of payroll data for approximately 900 employees. Defendant later supplemented its settlement production and produced payroll data for the remaining Settlement Class Members. *Id.* The Parties agreed to mediate with Frank Neuner on October 21, 2020. *Id*., ¶ 11.

Prior to the mediation, the Parties exchanged detailed mediation statements, analyzing the effect of Defendant's reclassification of Care Management Employees, Care Management Employees' job prerequisites and job requirements, Care Management Employees' job duties, the exemption defenses at issue in the case, and the hours worked by members of the potential settlement class. *Id.*, ¶ 13.

Plaintiffs' counsel thoroughly analyzed the merits of the case and the value of Plaintiffs' and Settlement Class Members' claims during the prosecution of this action. *Id.,* ¶ 14. The process included, among other things, (1) multiple conferences with the Named Plaintiffs; (2)

surveys sent to Named and Opt-in Plaintiffs to gather information to support their claims and damages; (3) conferences with Defendant regarding the scope of production, including a putative class list and compensation and time data; (4) inspection and analysis of the documents and materials produced by Plaintiffs, Opt-in Plaintiffs and Defendant; (5) analysis of the various legal positions taken and defenses raised by Defendant; (6) investigation and analysis of the guidelines used by Care Management Employees in the performance of their work; (7) assembling and analyzing data to compute potential class-wide damages; and (8) investigation regarding comparable settlements in similar cases involving allegedly misclassified care management employees. *Id*., ¶ 15.

### 3. The Parties Successfully Resolved the Claims through Mediation

The Parties participated in a full day video mediation conference with Frank Neuner on October 21, 2020. *Id*., ¶ 16. The Parties did not reach a settlement at that conference but did not reach impasse. They agreed to a continued mediation conference, again with Frank Neuner, on December 9, 2020. *Id.*

The Parties reached a settlement at the second mediation conference, and they executed a term sheet reflecting the material terms forming the basis of the Settlement Agreement that is now being submitted for this Court's consideration. *Id.,* ¶ 17. The investigation conducted in this matter, as well as discussions between counsel, have been more than sufficient to give the Plaintiffs and their Counsel a sound understanding of the merits of their positions and to evaluate the claims in the case. *Id.,* ¶ 18. Plaintiffs and their Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair and reasonable and is in the best interest of Named Plaintiffs, Opt-in Plaintiffs, and Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay,

the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues. *Id.*

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Defendant has agreed to pay the Gross Settlement Fund amount to settle the claims in this Action, which shall be used to provide for (i) all settlement payments to all Settlement Class Members; (ii) the Named Plaintiffs' and Opt-In Plaintiffs' Service Awards; (iii) all past, present, and future attorneys' fees, costs, expenses, and disbursements incurred by Named Plaintiffs or their counsel in this Action regarding the Settlement Class Members; and (iv) all fees and costs associated with settlement administration, including payment of the Settlement Administrator. Ex. 1, Settlement Agreement, § IV.5. The Gross Settlement Fund does not include the employer's share of applicable payroll taxes, which will be paid by Defendant outside the Gross Settlement Fund amount. *Id.*

### B.  Settlement Class Members and Distribution of Settlement Checks

The Settlement Agreement covers 1,228 individuals, including the Named Plaintiffs and 13 Plaintiffs who have already opted into the Action, who worked as salaried Care Management Employees as defined in the Settlement Agreement. Ex. 1, Settlement Agreement, § I. The Settlement does not resolve or release the claims of Settlement Class Members who have not previously opted into the Action and who do not negotiate their Settlement Check. *Id.*

The Parties have mutually selected Rust Consulting, an experienced Settlement Administrator, to administer this settlement. Should the Court approve the Settlement, the Settlement Administrator will shortly thereafter mail to all Settlement Class Members a Settlement Check representing their ratable settlement payment along with copy of the

Settlement Notice explaining the key terms of the Settlement Agreement. *Id*., § IV.10(d). A copy of the Settlement Notice is included as Exhibit B to the Settlement Agreement.

Pursuant to Section IV.10 of the Settlement Agreement, no later than 14 days after the funding of the settlement, the Settlement Administrator shall mail the Settlement Notice and Settlement Checks to Settlement Class Members via First Class U.S. Mail. *Id*. The Settlement Checks shall be negotiable for 180 days from the date they are mailed by the Settlement Administrator. *Id.*, § IV.9(a). The Settlement Administrator shall conduct standard skip tracing to locate missing Settlement Class Members and shall promptly re-mail the Settlement Notice and Settlement Check to any corrected or updated address. *Id.* § IV.10.e. The Settlement Administrator shall also issue a reminder postcard via U.S. mail and email within 60 days prior to the check Void Date to all Settlement Class Members who have not yet negotiated their Settlement Checks. *Id.*, § IV.10.f.

### C. Release for the Named Plaintiffs, Opt-in Plaintiffs, and Participating Settlement Class Members

The Named Plaintiffs, Opt-in Plaintiffs, and Participating Settlement Class Members will release the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the Second Amended Complaint as defined in the Settlement Agreement. Ex. 1, Settlement Agreement, § IV.4(a). Settlement Class Members who did not previously opt into the case and who do not negotiate their Settlement Check will *not* release any claims. *Id.*

### D. Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

Each Settlement Class Member's Individual Settlement Payment has been calculated using the payroll data Defendant produced and a calculation methodology developed by

Plaintiffs' Counsel to treat all Settlement Class Members equitably based on the dates they worked and the hours and earnings reflected in the payroll data. Ex. 1, Settlement Agreement, § IV.7(f). The settlement calculation methodology is set forth in the Settlement Agreement. *Id.*, § 8.

Each Settlement Class Member will receive his or her Individual Settlement Payment in one check, with half of the payment allocated to wages and the other half allocated to liquidated damages. *Id.* §§ IV.3, IV.7(g). Regular employee payroll deductions shall be withheld from the portion of each Individual Settlement Payment that is allocated to wages. *Id.* The Settlement Administrator will issue each Settlement Class Member the appropriate IRS tax forms. *Id.* Any Individual Settlement Payments that remain uncashed after the Void Date will be returned to Defendant. *Id.* § IV.9(c)

### E. Service Awards and Attorneys' Fees and Litigation Costs

Plaintiffs' Counsel shall apply for Service Awards to the Named Plaintiffs and Service Awards to each of the Opt-in Plaintiffs to be paid from the Gross Settlement Fund as stated in the Settlement Agreement. Ex. 1, Settlement Agreement, § IV.7(c). Plaintiffs' Counsel shall also request an amount not to exceed 35% of the Gross Settlement Fund to be paid from the Gross Settlement Fund as attorneys' fees, and reimbursement of actual litigation costs. *Id.* § IV.7(d)

## IV.   <u>THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT</u>

The Eighth Circuit has noted a circuit split on the issue of whether all FLSA settlements require judicial approval. *See, e.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) ("There is a circuit split on whether . . . to require judicial approval of all FLSA settlements. . . We have never taken a side on this issue. . . . [W]e need not decide our view on the circuit split today."). In general, however, district courts approach the issue by exercising

some level of review of any proposed FLSA settlement. *See, e.g.*, *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("[W]e will assume without deciding that the district court has a duty to exercise some level of review of the [proposed FLSA Settlement] Agreement and the attorneys' fee award.").[3] When evaluating whether to approve a proposed FLSA settlement, a district court evaluates whether "the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Berry v. Best Transportation, Inc.*, No. 4:16-CV-00473-JAR, 2020 WL 512393, at *1 (E.D. Mo. Jan. 31, 2020) (Ross, J.).  In determining the fairness of an FLSA settlement, courts "should be mindful of the strong presumption in favor of finding a settlement fair." *Donoho v. City of Pac., Missouri*, No. 4:19-CV-186 NAB, 2019 WL 5213023, at *1 (E.D. Mo. Oct. 16, 2019) (internal quotations omitted).

### A.  The Proposed Settlement Resolves a Bona-Fide Dispute Between the Parties

"A settlement addresses a bona fide dispute when it reflects a reasonable compromise over issues that are actually in dispute." *Stainbrook v. Minnesota Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017).  This settlement is a result of contested litigation and was reached only after the Parties performed an extensive investigation and litigated this matter for over a year, as described in Section II, *supra*. The Parties vigorously contested numerous substantive issues, including whether Care Management Employees were properly classified as exempt, whether they worked over forty hours a week, the appropriateness of liquidated damages, and whether this case could be tried as a collective action. The Settlement was reached only after the parties attended two day-long mediation sessions.

---

[3] *Johnson v. Thomson Reuters*, No. 18-cv-0070, No. 2019 WL 1254565, at *2 n.1 (D. Minn. Mar. 19, 2019) (noting that "[i]t is not entirely clear whether court approval is necessary," but proceeding to evaluate the parties' proposed FLSA collective action settlement to ensure it "is a fair and reasonable resolution of [a] bona fide dispute"); *Jones v. Synergies3 Tec Services*, No. 4:18-cv-01161-JAR, 2018 WL 6727061, at *1-2 (E.D. Mo. Dec. 21, 2018) (same).

Plaintiffs alleged Defendant violated the FLSA by misclassifying Care Management Employees as exempt and failing to pay them overtime at one and one-half times their regular rates when they worked more than forty (40) hours per week. Ex. 2, Salas Decl. ¶ 19. In support of their position, Plaintiffs relied on guidance from the U.S. Department of Labor and judicial decisions holding that the administrative and learned professional exemptions do not apply to case managers working in the managed care industry.[4] *Id.* Defendant denied the allegations and asserted that Care Management Employees are exempt employees. Defendant also relied on guidance from the U.S. Department of Labor and different judicial decisions holding that the administrative and learned professional exemptions applied to case managers to support its position that the Care Management Employees were exempt.[5] *Id.*

The Parties also disputed the number of hours Care Management Employees worked per week. *Id.*, ¶ 20. Defendant did not track the number of hours worked when Care Management Employees were classified as exempt. *Id.* Plaintiffs identified the range of hours they typically worked per week – some Plaintiffs claimed that they typically worked between 50 and 60 hours a week. *Id.* Defendant, on the other hand, provided data and asserted that discovery would show an average of 1.89 overtime hours per two-week pay period and less than 40 hours worked in at least 30% of weeks. *Id.*

The Parties also disputed whether liquidated damages were appropriate, and whether if overtime violations occurred, they were willful violations that triggered the three-year statute of

---

[4] *See, e.g.,* Opinion Letter Fair Labor Standards Act (FLSA), 2007 WL 541650, at *2 (Feb. 8, 2007); *Clark v. Centene Co. of Texas, L.P.,* 44 F. Supp. 3d 674, 682–83 (W.D. Tex. 2014).

[5] *See, e.g.,* Opinion Letter Fair Labor Standards Act (FLSA), 2001 DOLWH LEXIS 30 (Jan. 24, 2001); *Unruh v. Humana Insurance Company,* No. 17-c-1782, 2019 WL 4648934 (N.D. Ill. Sept. 24, 2019); *Chatfield v. Children's Services, Inc.,* 555 F. Supp. 2d 532, 534-35 (E.D. Penn. 2008).

limitations period, and whether this action could proceed to trial on a collective action basis. *Id.,* ¶ 21.  If the matter had not settled, Plaintiffs risked decertification of their FLSA collective action after discovery, a process that would have been time-consuming and costly for all Parties. *Id.*

This procedural posture, where Defendant denies that it violated the FLSA by classifying Care Management Employees as exempt, disputed the hours worked, and settlement was reached only after extensive private mediation, supports the finding that a bona-fide dispute exists between the Parties. *See, e.g.*, *Ezell v. Acosta, Inc.*, No. 4:16CV870 RLW, 2019 WL 8160704, at *2 (E.D. Mo. Apr. 4, 2019) (finding participation in a full day mediation evidence of a bona fide dispute); *King v. Raineri Const., LLC*, No. 4:14-CV-1828 CEJ, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) ("the proposed settlement is the product of contested litigation as the parties dispute the amount of overtime hours plaintiffs actually worked").

### B.  The Proposed Settlement is Fair and Equitable to All Parties

When examining whether the settlement is reasonable, courts consider the following factors: "the stage of the litigation, the amount of discovery exchanged, the experience of counsel, and the reasonableness of the settlement amount based on the probability of plaintiffs' success with respect to any potential recovery." *Berry*, 2020 WL 512393, at *1; *see also King v. Raineri Constr., LLC*, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015.).  Where, as here, the FLSA settlement was the product of arm's length negotiation "courts should be mindful of the strong presumption in favor of finding a settlement fair." *King*, 2015 WL 631253, at *2-3. The terms of the Settlement Agreement satisfy these factors.

### 1. The Stage of the Proceedings

The parties litigated this case for over a year. They exchanged substantial information and voluminous records before participating in two day-long mediation sessions, which resulted in the resolution of this Action.

If the litigation had continued, it would have been complex, expensive, and protracted. Ex. 2, Salas Decl. ¶ 22. There is no precedential authority on the exemption defenses that Defendant asserted for Care Management Employees. *Id.* Given the lack of precedential authority, the Parties likely would have appealed any final judgment entered by this Court. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now.

### 2. The Amount of Discovery Engaged in by the Parties

This collective action was resolved only after Defendant produced comprehensive payroll data for all Settlement Class Members. Ex. 2, Salas Decl. ¶ 12. In addition, at the time the Action was resolved, seventeen individuals had joined this Action and provided information and documents to Plaintiffs' Counsel. *Id.*, ¶ 27. The stage of litigation had advanced so that Plaintiffs' Counsel could fairly and fully evaluate the value of the settlement. *Id.,* ¶ 18. As a result, the Parties had sufficient information to evaluate the strength of their claims. This factor supports granting approval of the Settlement Agreement.

### 3. The Experience of Plaintiffs' Counsel[6]

The attorneys at Werman Salas P.C. are highly experienced class and collective action litigators. *See* Attachment 1 to Ex. 2, Salas Decl. (firm resume). In *Osman, et al. v. Grube, Inc.*, the Honorable James R. Knepp approved a collective action settlement, finding the attorneys at

---

[6] Defendant does not join in this section of the Motion, but does not oppose it.

Werman Salas P.C. are "known and recognized lawyers in wage and hour litigation and have an excellent national reputation in representing tipped employees in this type of case. Courts recognize Plaintiffs' Counsel as leaders in advocating the rights of such workers throughout the United States." No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018), *see also* Ex. 2, Salas Decl. ¶ 4. In *Sanchez v. Roka Akor Chicago LLC*, the Honorable Virginia Kendall approved a class and collective settlement, finding Plaintiff's Counsel "national leaders in advocating the rights of working people in wage and hour litigation" and describing Douglas Werman as a "highly respected and experienced lawyer[]…" No. 14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017). *See also* Ex. 2, Salas Decl. ¶ 6.

Mr. Werman is one of ten lawyers (five employee-side lawyers and five defense lawyers) who was nominated to draft proposed Initial Discovery Protocols for individual Fair Labor Standards Act ("FLSA") cases, a pilot project that has been implemented by individual judges throughout the United States District Courts. Attachment 1 to Ex. 2, Salas Decl. at 7; *see also* https://www.txs.uscourts.gov/sites/txs/files/Final_Initial_Discovery_Protocols_FLSA.pdf. The project and the product are endorsed by the Federal Judiciary Center and Civil Rules Advisory Committee and is supervised by the Institute for the Advancement of the American Legal System. *Id.* Mr. Werman is a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. *Id.* Ms. Salas is a contributing editor of Chapter 17 ("Collective Actions and 'Hybrid Class' Actions") of that same treatise. *Id.* at 7-8. Both Mr. Werman and Ms. Salas are frequent speakers on wage and hour matters both locally and on a national basis. *Id.*

14

Travis Hedgpeth also is an experienced wage and hour litigator and has significant experience representing care management employees. Exhibit 3, Declaration of Travis Hedgpeth ¶ 5. His prior litigation experience has given him a comprehensive understanding of the health insurance and care management industry, federal and state laws relating to Medicare and Medicaid administration, and all the job duties of care management employees that is essential to maximize the chance of an early resolution on behalf of a broad class of individuals. Ex. 3, Hedgpeth Decl. ¶ 8.

The role of local counsel for the Plaintiffs was filled by Russell C. Riggan of the Kirkwood, MO law firm Riggan Law Firm LLC.  Mr. Riggan has significant experience as counsel in FLSA collective actions within Missouri's Federal Courts including, but not limited to *Mayberry v. SSM Health Businesses*, No. 4:15-CV-1680-CEJ, 2017 WL 2334981 (E.D. Mo. May 30, 2017) and *Shanks v. St. Louis Cty.*, No. 4:14CV1599 HEA, 2016 WL 659103 (E.D. Mo. Feb. 18, 2016).

Plaintiffs' Counsel's extensive experience as wage and hour litigators supports approval of the Settlement.

### 4. The Reasonableness of the Settlement Amount Based on the Probability of Plaintiffs' Success with Respect to any Potential Recovery

The Settlement Agreement has the effect of (1) providing monetary relief to those Settlement Class Members who have already opted into the Action and those who choose to negotiate their Settlement Checks and become Participating Settlement Class Members, (2) in exchange for a limited release of claims, and (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores,*

15

*Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates Settlement Class Members who choose to participate in the Settlement and eliminates the possibility of decertification of the collective following phase two discovery, loss on summary judgment, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that Participating Settlement Class Members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement Agreement. According to the calculations of Plaintiffs' Counsel (which Defendant has accepted for settlement purposes only), the Gross Settlement Amount represents the alleged overtime wages for all Settlement Class Members based on their dates of employment, their hours and earnings reflected in the payroll data, and Assumed Additional Work Time that was a compromise between Plaintiffs' position and Defendant's position on hours worked.  Ex. 2, Salas Decl. ¶ 23. Even *after* the payment of attorneys' fees and costs, settlement administration costs, and the service awards, all Settlement Class Members will receive a check representing approximately 63% of the alleged overtime wages under Plaintiffs' Counsel's settlement calculation methodology. *Id.* The average Individual Settlement Payment to the Settlement Class Members is approximately $1,775. Ex. 2, Salas Decl. ¶ 24.  Plaintiffs' Counsel believes this is an excellent result given that Defendant denies that Care Management Employees are entitled to overtime at all and vigorously disputes that Care Management Employees regularly worked over 40 hours each week.  In addition, Settlement Class Members who have not yet opted into the Action may elect to not cash their Settlement Check and not be bound by the Settlement.

16

## V.   PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND EXPENSES ARE REASONABLE[7]

### A.  The FLSA Allows for Payment of a Reasonable Attorney's Fee.

As part of the FLSA collective settlement in this case, the Parties agreed that Plaintiffs would seek the Court's approval of 35% of the Gross Settlement Fund in reasonable attorney's fees – calculated as 35% of the Gross Settlement Fund – plus reimbursement of actual litigation costs.  The attorney's fees provision of the FLSA exists to enable plaintiffs to employ skilled lawyers and, thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Generally, "[t]he amount of the fee . . . must be determined on the facts of each case," and "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 (1983).

### B.  A Reasonable Attorney's Fee Using the "Percentage of the Benefit" Approval.

Where, as here, attorneys successfully negotiate a common fund through a settlement, courts award attorneys' fees as a percentage of the fund.  *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("[T]he 'percentage of the benefit' approach permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.").

The requested percentage of the benefit here – 35% of the common fund – is in line with other awards in the Eighth Circuit.  *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming district court's award of 36% of a class action settlement fund); *see also Harvill*

---

[7] Defendant does not join in this section of the Motion, but does not oppose it.

*v. Phelps County Restaurant LLC,* No. 4:14-cv-1444-JAR (E.D. Mo. July 31, 2015), ECF No. 53 (approving a fee award representing 35% percent of the settlement fund in a FLSA collective and Missouri Minimum Wage Law class action alleging minimum wage violations).

Furthermore, the Eighth Circuit has noted district courts shall afford "a certain level of deference" in reviewing the amount of attorney's fees that a defendant has agreed to pay in an FLSA settlement. *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("[R]eview of attorneys' fees included in a settlement agreement requires a certain level of deference by the district court to the parties' agreement."). The Eighth Circuit explained, "any process of reviewing and approving stipulated attorneys' fees in the event of a settlement is more deferential than resolving attorneys' fees in a disputed case."[8] *Id.* at 780 (citing *Hensley*, 461 U.S. at 437 (As the Supreme Court noted, "Ideally, of course, litigants will settle the amount of a fee" and "[a] request for attorney's fees should not result in a second major litigation.")).  In *Melgar*, the Eighth Circuit reversed the district court's reduction of the agreed-upon fees in an FLSA settlement, concluding that the "the district court's approach extended beyond the scrutiny the situation required." *Id.* at 779.  The court remanded with instruction to award the full amount of fees contemplated by the settlement agreement. *Id.* at 780.

Here, the Parties' Settlement Agreement contemplates 35% of the Gross Settlement Fund in reasonable attorney's fees and reimbursement of actual litigation costs.  Under Eighth Circuit precedent, the Court should approve this request, as the fee is calculated under the well-

---

[8] In *Barbee*, the Eighth Circuit recently held in the context of an individual FLSA settlement that settled fees do not require judicial approval. *Barbee*, 927 F.3d 1024, 1026. That ruling likely does not extend to the circumstances raised in this case, where the Settlement Agreement benefits a collective and the requested fees are awarded using the "percentage of the benefit" method.

established percentage of the benefit method within the range of frequently approved fees in the Eighth Circuit and this district.

**C.  Other Factors Support the Requested Fees.**

Courts also reference additional factors in assessing a request for fees in a common fund situation, including: "(1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the experience, reputation and ability of the attorneys; and (5) awards in similar cases." *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 702 (8th Cir. 2017).

Here, Plaintiffs' Counsel obtained a concrete and substantial benefit for the members of the collective, in the face of disputed issues and risks of continued litigation.  Furthermore, the Named Plaintiffs signed a fee agreement granting Plaintiffs' Counsel a 40% interest in the gross amount recovered. Ex. 2, Salas Decl. ¶ 29. Plaintiffs' Counsel have voluntarily reduced their fee and seek 35% of the Gross Settlement Fund. *Id.*  Plaintiffs' Counsel took the case on without any guarantee of success and the possibility of no recovery. *Id*., ¶ 28. Furthermore, the case raised novel questions regarding the application of multiple FLSA exemptions to the job positions at issue, and these questions were litigated by attorneys with robust experience in wage and hour collective actions.  *Id.,* ¶¶ 3-7, 18.  These additional considerations further support the conclusion that the fee contemplated by the Settlement Agreement is reasonable.

**D.  Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check.**

When the percentage of the fund methodology is used to evaluate attorneys' fees in a common fund settlement, a lodestar cross-check is "not required." *See Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *see also In re St. Paul Travelers Sec. Litig.*, No. CIV. 04-3801 JRTFLN, 2006

WL 1116118, at *1 (D. Minn. Apr. 25, 2006). Plaintiffs' Counsel's fee request should be approved because it is based on a reasonable percentage. No further showing or analysis is needed.

Based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members, Plaintiffs' Counsel's request for 35% of the Gross Settlement Fund is reasonable.

**E. Class Counsel's Requested Expenses Are Reasonable.**

Class Counsel has expended $7,317 in costs through the present date pursuing this litigation including filing fees, pro hac vice admission fees, photocopies, postage, delivery fees, research, and mediation fees. Ex. 2, Salas Decl. ¶¶ 30-31; Ex. 3, Hedgpeth Decl. ¶ 9. The litigation costs for which Plaintiffs' Counsel seeks reimbursement are reasonable and are of the kind and character typically reimbursed from a settlement fund. *See, e.g.*, *Netzel v. West Shore Group, Inc.*, 2017 WL 1906955, at *9 (D. Minn. May 8, 2017) (explaining that, consistent with Supreme Court and Eighth Circuit precedent, courts routinely approve reimbursement of expenses from a settlement fund for such things as "travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment").

**VI.    THE REQUESTED SERVICE PAYMENTS ARE REASONABLE[9]**

The Settlement Agreement provides for Service Awards to the Named Plaintiffs and Service Awards to each of the Opt-in Plaintiffs to be paid out of the Gross Settlement Fund as stated in the Settlement Agreement. Ex. 1, Settlement Agreement, § IV.7(b). This payment is in addition to any payment they will receive as their *pro rata* share of the Settlement Class Fund.

---

[9] Defendant does not join in this section of the Motion, but does not oppose it.

Named Plaintiffs in collective or class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Courts have found that a named plaintiff coming forward and potentially placing their careers at risk supports granting of service award." *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *7 (D. Minn. May 8, 2017); *see also Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) ("Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers.").

The Service Awards sought here are in recognition of the Named Plaintiffs' efforts in pursuing the claims raised in this Action on behalf of the Settlement Class Members. Ex. 2, Salas Decl. ¶ 25. The Named Plaintiffs provided factual information and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation, and filed this suit knowing that future employers may not hire them because they filed a lawsuit against a former employer. *Netzel*, 2017 WL 1906955, at *7. The incentive reward is designed to compensate the plaintiffs for taking on such a risk. *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012).

Plaintiffs seek lesser Service Awards for the Opt-in Plaintiffs who also provided a great service to Settlement Class Members. By joining the case and providing declarations, the Opt-in Plaintiffs assisted the Named Plaintiffs in successfully obtaining conditional certification in the Action. Ex. 2, Salas Decl. ¶ 26.  Specifically, the Named and Opt-in Plaintiffs provided declarations in support of the Motion for Conditional Certification, which the Court granted in part. *Id*.

The Named Plaintiffs and Opt-in Plaintiffs also are deserving of service awards because they provided information and documents necessary to allow all Settlement Class Members to

benefit from a successful resolution of the case. *Id., ¶* 27. In light of the Named Plaintiffs' and Opt-in Plaintiffs' substantial efforts resulting in a settlement on behalf of 1,228 persons, Settlement Class Members will receive Settlement Checks in an average amount of $1,775. *Id.,* ¶ 24.

Courts in this Circuit and others have approved incentive awards for similar activities. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017) ("Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.") (affirming service awards of $10,000 to each of the two named plaintiffs and noting that "courts in this circuit regularly grant service awards of $10,000 or greater"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming incentive awards of $25,000 to each of the three named plaintiffs as compensation for their work and the benefit they conferred on the rest of the class); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in wage-and-hour settlement); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement).

The Service Awards allocated to the Opt-in Plaintiffs also comport with service payments awarded to opt-in plaintiffs in other FLSA actions. *Martin v. Safe Haven Sec. Servs., Inc.*, No. 19-CV-00063-ODS, 2020 WL 4816418, at *2 (W.D. Mo. Aug. 19, 2020) (approving $500 service awards to certain settlement class members); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (approving $500 service award to certain opt-in plaintiffs in an FLSA settlement).

The requested Service Awards represent 1% of the Gross Settlement Fund, which is a reasonable percentage.  *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2014 WL 12616695, at *2 (W.D. Mo. Mar. 4, 2014) (approving two $10,000 service awards equal to over 2% of the total available for settlement); *Stull v. Kraft Foods Glob., Inc.*, No. 2:09-CV-04187-NKL, 2010 WL 11618790, at *2 (W.D. Mo. Nov. 8, 2010) (approving service award equal to 1.3% of settlement fund).

## VII.    CONCLUSION

This Settlement is a result of contested litigation and was reached after extensive settlement negotiations with an experienced mediator. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Settlement Class Members with significant monetary relief in lieu of risky protracted litigation. Because the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, it should be approved.

Dated:  April 12, 2021                                Respectfully submitted,

                                                By:  /s/ Maureen A. Salas

                                                Douglas M. Werman
                                                Maureen A. Salas
                                                **WERMAN SALAS P.C.**
                                                77 West Washington, Suite 1402
                                                Chicago, Illinois 60602
                                                Telephone: (312) 419-1008
                                                dwerman@flsalaw.com
                                                msalas@flsalaw.com

                                                Travis M. Hedgpeth
                                                **THE HEDGPETH LAW FIRM, PC**

3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727
Facsimile: (281) 572-0728
travis@hedgpethlaw.com

Russell C. Riggan #53060
Samuel W. Moore #58526
**RIGGAN LAW FIRM LLC**
130 West Monroe Avenue
Kirkwood, MO 63122
Telephone: (314) 835-9100
Facsimile: (314) 735-1054
russ@rigganlawfirm.com
smoore@rigganlawfirm.com

**Attorneys for Plaintiffs and
Others Similarly Situated**

/s/Breanne Sheetz Martell
Patricia J. Martin
**LITTLER MENDELSON, P.C.**
600 Washington Ave., Suite 900
St. Louis, MO 63101
Telephone: 314.659.2000
Facsimile: 314.659.2099
pmartin@littler.com

Douglas E. Smith
*Pro Hac Vice*
Breanne Sheetz Martell
*Pro Hac Vice*
Alyesha A. Dotson
*Pro Hac Vice*
**LITTLER MENDELSON, P.C.**
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101
Telephone: 206.623.3300
desmith@littler.com
bsmartell@littler.com
adotson@littler.com

**Attorneys for Defendant**

24