UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMANDA DEL TORO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Case No. 4:19-CV-02635-JAR |
| | ) |
| CENTENE MANAGEMENT COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER APPROVING SETTLEMENT**

This matter is before the Court on the parties' Joint Motion for Approval of Settlement Under the Fair Labor Standards Act, for Appointment of Settlement Administrator, for Approval of Service Awards, and for Approval of Attorneys' Fees and Costs. (Doc. 79). Because the Court finds that the settlement is fair and equitable to all parties, it will approve the settlement.

**I.    BACKGROUND**

Defendant Centene Management Company, LLC provides administrative and business support for subsidiaries of Centene Corporation. Those subsidiaries offer managed healthcare products and services through Medicaid, Medicare, and commercial health insurance, and Defendant employs most health plan employees. (Doc. 74 at ¶¶ 3-5). Plaintiffs are Care Management Employees who allege that Defendant failed to pay overtime wages for non-exempt work in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). (*Id.* at ¶¶ 10-13). Plaintiffs filed their initial complaint (Doc. 1) on September 25, 2019 pursuant to § 216(b) of FLSA, and filed an amended complaint on October 31, 2019. (Doc. 21). Defendant filed an Answer on November 27, 2019. (Doc. 27). On April 30, 2020, this Court granted in part Plaintiffs' Motion for Step-One Notice and conditionally certified a class of Care Management Employees

1

in Texas, Louisiana, Georgia, Florida, Ohio, New York, and Washington. (Doc. 56). Plaintiff filed the operative Second Amended Complaint on March 25, 2021. (Doc. 74).

Through mediation, the parties achieved a Settlement Agreement (Doc. 80-1) covering 1,228 individuals, including the named Plaintiffs and 13 opt-in Plaintiffs. Under the terms of the Settlement Agreement, all Class members will receive settlement checks representing approximately 63% of the alleged overtime wages owed pursuant to Plaintiffs' Class counsel's calculation methodology, averaging $1,775 per Class member. (Doc. 80 at 22). Plaintiffs also seek approval of attorneys' fees in the amount of 35% of the Gross Settlement Fund, $7,317 in Class counsel expenses, and Service Awards for the named and opt-in Plaintiffs.

## II. LEGAL STANDARD

There is a circuit split, which remains unresolved in the Eighth Circuit, as to whether FLSA requires judicial approval to settle bona fide disputes over wages owed. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019); *see also Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("[W]e recognize an apparent circuit split as to whether private settlements relating to FLSA claims require district court review."). Acknowledging this split, courts in this district typically review the settlement's FLSA-related terms for fairness to ensure the parties are not left in an "uncertain position." *King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015). This Court will follow that reasonable precedent.

This Court may only approve a FLSA settlement agreement if it determines that the litigation "involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Frye v. Accent Mktg. Servs., LLC*, No. 4:13-CV-59 (CDP), 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In determining whether a settlement is fair and reasonable under FLSA, factors a court

2

may consider include "the stage of the litigation, the amount of discovery exchanged, the experience of counsel, and the reasonableness of the settlement amount based on the probability of plaintiffs' success with respect to any potential recovery." *Pendergrass v. Bi-State Utils. Co.*, No. 4:18-CV-01092-NCC, 2019 WL 3532005, at *1 (E.D. Mo. Aug. 2, 2019) (citation omitted). "In making a fairness determination, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Donoho v. City of Pac., Missouri,* No. 4:19-CV-186 NAB, 2019 WL 5213023, at *1 (E.D. Mo. Oct. 16, 2019) (citations omitted); *see also Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) (citations omitted) ("[A] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

**III.   ANALYSIS**

   A.  Settlement Agreement

First, this Court finds that the Settlement Agreement stems from a bona fide dispute. A settlement is bona fide if it "reflects a reasonable compromise over issues actually in dispute." *King*, 2015 WL 631253, at *2 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)). The record reflects that the parties exchanged substantial documentation and vigorously contested key issues, including the fundamental questions of whether the Care Management Employees were properly classified as exempt and how many hours per week these employees worked. The parties participated in two extensive mediation sessions before reaching a settlement. Courts have routinely found that a bona fide dispute exists in similar postures. *See, e.g.*, *Ezell v. Acosta, Inc.*, No. 4:16-CV-870 RLW, 2019 WL 8160704, at *2 (E.D. Mo. Apr. 4, 2019) (noting the parties exchanged discovery and engaged in mediation).

Second, considering the totality of the circumstances, this Court finds that the proposed settlement is reasonable and fair to all parties. The parties litigated this case for over a year and

3

know the potential recovery and relative risks of proceeding to trial with their claims; yet the litigation is not so advanced that the parties will not realize significant benefits by settling before filing dispositive motions and proceeding to trial. The parties have been represented by experienced and competent counsel and the settlement reflects a compromise based on the merits of Plaintiffs' claims. The Court notes that the settlement brings certainty and prompt payment of a substantial mount of money to the Class members, who will receive an average settlement check of $1,775. Meanwhile, those Class members who have not opted into the case remain free to decline the settlement check and avoid being bound. In these circumstances, this Court finds no basis to challenge the "strong presumption in favor of finding a settlement fair." *Donoho*, 2019 WL 5213023, at *1.

Lastly, the Court notes that it has reviewed and approved only the material terms of the proposed settlement as they relate to Plaintiffs' FLSA claims. "No opinion is necessary as to the enforceability of [other] terms and none is given. The Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *King*, 2015 WL 631253, at *4 (quoting *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 134 (D.D.C. 2014)).

B. Attorneys' Fees and Costs

Recently, in *Barbee v. Big River Steel, LLC*, the Eighth Circuit held that "judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." 927 F.3d 1024, 1027 (8th Cir. 2019). Considering the particular circumstances of this case, this Court concluded that *Barbee* does not apply because, among other reasons, the "the proposed attorneys' fees are calculated as a percent of settlement funds" and are therefore "necessarily intertwined with the [P]laintiffs' settlement." (Doc. 82 at 2). Accordingly, the Court ordered Plaintiffs' counsel to

4

file under seal a "condensed summary of the total hours expended on this litigation and an estimated hourly rate, along with any other relevant information." (*Id.*). Plaintiffs' counsel timely filed an extensive summary of the services rendered in this litigation, as well as a supporting memorandum. (Doc. 83). This Court provided Defendant an opportunity to reply to this filing, and Defendant declined to do so.

The Eighth Circuit has clarified that "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of attorneys' fees." *Melgar*, 902 F.3d at 779. Instead, this Court should only assess whether the fees are fair and reasonable, and the inquiry "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Among other factors, this Court considers (1) whether the fee is fixed or contingent; (2) the amount involved and the results obtained; (3) the novelty and difficulty of the questions; (4) the experience, reputation and ability of the attorneys; and (5) awards in similar cases. *See Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) (citation omitted).

Plaintiffs' counsel seeks a fee representing 35% of the Gross Settlement Fund, as well as reimbursement of actual litigation costs. At the outset, this Court recognizes that Plaintiffs' "percentage of the benefit" approach to calculating fees is appropriate as long as the fees are fair and reasonable. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). The 35% fee sought my Plaintiffs' counsel, moreover, is "in line with other awards in the Eighth Circuit. Indeed, courts have frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *see, e.g., Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (approving 33% fee in class action settlement).

As to the other factors, this case involved complex legal and factual issues and substantial exchange of discovery between the parties. Plaintiffs' counsel incurred substantial risk by pursuing this litigation. (Doc. 80-2 at ¶ 28). The named Plaintiffs initially signed a fee agreement granting

5

counsel 40% of the gross recovery, but Plaintiffs' counsel has voluntarily reduced this amount to 35%. (*Id.* at ¶ 29). Plaintiffs' counsel obtained an excellent result for their clients, with the Class members receiving on average 63% of the alleged overtime wages they were owed. Plaintiffs' counsel has also demonstrated their expertise and experience in class action litigation, including FLSA litigation specifically. (Doc. 83 at 11-13).

Finally, while it is not strictly necessary, courts considering percentage-of-the-fund fees will often verify the reasonableness of such fees by employing the lodestar method. *See Petrovic*, 200 F.3d at 1157. This method does not require "mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005). Plaintiffs' counsel has produced substantial documentation demonstrating meaningful effort and resources devoted to this litigation, resulting in a lodestar multiplier (*i.e.*, the requested fee divided by the product of the hours of legal services and attorneys' hourly rates) of 2.73. This multiplier is supported by adequate evidence and in line with multipliers approved by courts in the Eighth Circuit. *See Huyer*, 849 F.3d at 399 (noting courts within Eighth Circuit have approved lodestars up to 5.6); *Keil*, 862 F.3d at 701-03 (approving lodestar with multiplier of 2.7); *In re Charter Commc'ns, Inc., Securities Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *22 (E.D. Mo. June 30, 2005) (approving lodestar with multiplier of 5.6).

After extensive consideration, this Court will approve the requested attorneys' fees and costs. Review of Plaintiffs' counsel's fees requires a "certain level of deference" to the Settlement Agreement. *Melgar*, 902 F.3d at 799. The parties have reasonably employed a percentage-of-the-fund approach, and a 35% fee is within the range routinely approved by courts in the Eighth Circuit. Meanwhile, Plaintiffs' counsel undertook substantial financial risk, exchanged discovery and participated in mediation concerning complex factual and legal issues, and ultimately came

6

away with an excellent result for their clients. Finally, this Court double-checked the fees through a lodestar analysis which confirmed that the requested fees are well within the range of reasonableness. The Court also finds that Plaintiffs' counsel has justified recovery of litigation costs in the amount of $7,317.

### C. Service Awards

Plaintiffs have also requested service awards for the named Plaintiffs and opt-in Plaintiffs, in addition to any payment such individuals will receive as their *pro rata* share of the fund. In assessing the reasonableness of the awards, this Court considers (1) actions the plaintiffs took to protect the class' interests; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the Plaintiffs expended in pursuing the litigation. *U.S. Bancorp.*, 291 F.3d at 1038. Plaintiffs' counsel has affirmed that these individuals "provided factual information and otherwise assisted Plaintiffs' [c]ounsel with the prosecution of this litigation, and filed this suit knowing that future employers may not hire them because they filed a lawsuit against a former employer." (Doc. 80 at 27). The named Plaintiffs also participated in multiple conferences. (*Id.* at 11). The entire Class substantially benefitted from the actions of the named Plaintiffs and opt-in Plaintiffs. The Eighth Circuit, moreover, has consistently approved service awards similar to the awards sought in this case. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017) (Court approved $10,000 service awards to named plaintiffs and affirmed that "courts in this circuit regularly grant service awards of $10,000 or greater."). Therefore, this Court will approve the service awards to the named and opt-in Plaintiffs.

### D. Redacted Settlement Agreement

Before filing the proposed Settlement Agreement, the parties submitted a Joint Motion to File Settlement Agreement Under Seal. (Doc. 77). This Court, acknowledging that the Eastern

7

District of Missouri is considering a revised local rule expanding access to court records, ordered the parties to publicly submit a redacted version of the Settlement Agreement while filing the unredacted agreement under seal. (Doc. 78). The parties have now filed a redacted version of the Settlement Agreement. (Doc. 80-1). This Court finds that the parties have effectively limited the redactions in a manner which appropriately balances the presumption of public access with the legitimate public interest in encouraging settlement. *See IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (discussing presumption of public access); *Petrovic*, 200 F.3d at 1149 (discussing public interest in encouraging settlement).

Accordingly,

**IT IS HEREBY ORDERED** that the parties' Joint Motion to File Settlement Agreement Under Seal (Doc. 77) is **GRANTED** because the parties have publicly filed a minimally redacted version of the Settlement Agreement.

**IT IS FURTHER ORDERED** that the parties' Joint Motion for Approval of Settlement Under the Fair Labor Standards Act, for Appointment of Settlement Administrator, for Approval of Service Awards, and for Approval of Attorneys' Fees and Costs (Doc. 79) is **GRANTED** as follows:

- The Settlement Agreement is hereby **APPROVED** with respect to the Named Plaintiffs, Opt-in Plaintiffs, and Participating Settlement Class Members, and is binding on them as defined in the Settlement Agreement. The terms of the parties' Settlement Agreement, including the amended definition of the FLSA collective, are incorporated by reference into this Memorandum and Order.

- The Service Awards to the Named Plaintiffs and Opt-in Plaintiffs to be paid out of the Gross Settlement Fund are hereby **APPROVED**.

- Plaintiffs' counsel's request for attorneys' fees in the amount of 35% of the Gross Settlement Fund and litigation expenses in the amount of $7,317.90 to be paid out of the Gross Settlement Fund are hereby **APPROVED**.

- Rust Consulting's appointment as Settlement Administrator is hereby **APPROVED**.

- The form, content, and distribution method of the parties' proposed settlement notices are hereby **APPROVED**. The parties are authorized to utilize all reasonable and mutually agreed upon procedures in connection with the administration of the Settlement Agreement as long as such procedures are not inconsistent with this Memorandum and Order.

**IT IS FINALLY ORDERED** that this Memorandum and Order shall constitute a final Judgment pursuant to Fed. R. Civ. P. 58.

Dated this 5th day of May, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE